IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAYNE S. BOSNICH,                          )
                                           )
            Plaintiff,                     )
                                           )  Case No. 08-C-3430
vs.                                        )
                                           )
MICHAEL J. ASTRUE,                         )  Magistrate Judge
Commissioner of Social Security,           )  Arlander Keys
                                           )
                                           )
            Defendant.                     )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jayne S. Bosnich seeks Summary Judgment reversing

the final decision of the Commissioner of Social Security denying

her request for waiver of repayment of an assessed overpayment

under Title II of the Social Security Act. 42 U.S.C.S §§416, 423.

The Commissioner has filed a Cross-Motion for Summary Judgment.

Jurisdiction arises under 28 U.S.C. §636(c) based on consent by

the parties for this Court to conduct any and all proceedings.

Pursuant to 42 U.S.C. §405(g), Ms. Bosnich initiated this civil

action for judicial review of the Commissioner's final decision.

All administrative remedies have been exhausted. For the reasons

set forth below, the Commissioner's motion for summary judgment

is granted, and Ms. Bosnich's motion for summary judgment is

denied.

## Procedural History

On January 21, 1992, Ms. Bosnich applied for disability insurance benefits ("DIB") claiming that mental impairments, including chronic depression and panic attacks, prevented her from working. (R at 22-26). The Commissioner found Ms. Bosnich to be disabled and awarded her DIB effective May 29, 1991, the date of onset of her disability. (R at 26).

In February 1992, Ms. Bosnich returned to work and began a trial work period ("TWP"). (R at 119-121). "A TWP is a period of nine months (which need not be consecutive) during which a DIB recipient may test his ability to work in spite of health problems." 42 U.S.C. § 422(c); 20 C.F.R. § 404.1592; *Bosnich v. Barnhart*, No. 05-5071, 2006 U.S. Dist. LEXIS 55216, at *2 (N.D. Ill. July 31, 2006).

The Social Security Administration ("SSA") advised Ms. Bosnich that "a trial work month is any month in which a person earns more than $200 in gross wages." (R at 120). Ms. Bosnich earned more than $200.00 in gross wages in each month from February 1992 through June 1992 and from April 1993 through July 1993. (R at 72-116). In July 1993, Ms. Bosnich's TWP was completed. (R at 126).

The earnings were from when Ms. Bosnich worked for two temporary employment agencies between February 1992 and June

2

1992. (R at 113-116). Starting in April 1993, Ms. Bosnich worked as a file clerk at the University of Chicago Hospital. (R at 73-74, 179). In November 1996, the department she worked for moved to another location in the hospital, so she was let go. (R at 179). In January 1997, the department called her back to help complete a filing project. Id. She performed essentially the same work since 1993, including filing charts, pulling charts, and filing loose notes. Id.

After her TWP, Ms. Bosnich started her thirty-six month extended period of eligibility ("EPE"). (R at 120). During this period, DIB recipients receive benefits as long as their work does not constitute substantial gainful activity ("SGA") and their health problems still meet SSA guidelines. 42 U.S.C. § 423(e)(1). SGA is work activity that is both "substantial" and "gainful." 20 C.F.R. §404.1572. The Commissioner defines "substantial" as involving significant physical or mental activity and "gainful" as activity done for profit. Id. If a claimant is capable of performing SGA, benefit payments will stop. 42 U.S.C. §423(e)(1).

For Ms. Bosnich, her EPE began in August 1993 and ended at the end of July 1996. (R at 72-116, 120, 126). Ms. Bosnich earned $1,347.50 in gross wages in February 1997, far in excess of the $500 that defined SGA at that time. (R at 92). The SSA will pay

benefits for the month disability ends and the next two months regardless of the amount earned. 42 U.S.C. § 423 (a)(1)(E). Therefore, Ms. Bosnich's DIB ended in May 1997. (R. at 130-33, 144-46).

In April 2000, the SSA reviewed Ms. Bosnich's file for continuing disability. (R. at 67). Apparently as a result of that review, the SSA notified Ms. Bosnich in October 2000 that her disability benefits would likely end, given that she was performing SGA in 1997 and 1998 and earning more than was permissible. (R at 119-21, 123). On November 10, 2000, the SSA informed Ms. Bosnich that she was not entitled to disability benefits as of May 1997. (R at 130-33, 144-46). The SSA also explained that Ms. Bosnich's receipt of payments from May 1997 through November 2000 resulted in an overpayment of $43,380.70. Id. The SSA waived the overpayment on March 27, 2001, however, which absolved Ms. Bosnich of her obligation to repay this sum. (R. at 139.)

Subsequently, because Ms. Bosnich continued to receive payments while appealing the first overpayment, a second overpayment occurred. (R at 148-54). On August 27, 2002, the Commissioner made a decision to affirm the initial determination that Ms. Bosnich's disability ended as of May 1997. (R. 144-47). The SSA then notified Ms. Bosnich that, from April 2001 through

4

August 2002, she was overpaid a second time in the amount of $23,269.00. (R at 148-54). Ms. Bosnich timely requested a waiver of the second overpayment and a hearing before an Administrative Law Judge ("ALJ"). (R at 155).

Ms. Bosnich was granted a pre-trial conference on November 14, 2003 and a hearing before an ALJ on February 24, 2004. (R at 246, 268). At the hearing on February 24, 2004, Ms. Bosnich and her husband, Brice Bosnich, both testified before the ALJ. (R at 268-318). Ms. Bosnich, then sixty-three years old, testified that she returned to work while receiving DIB because she thought she was supposed to; she testified that she had a telephone conversation with an SSA representative, who left her with the idea that she needed to work in order to maintain benefits. (R at 280, 289, 292, 294). Ms. Bosnich testified that she "remember[ed] getting a pamphlet about Social Security . . . I had a file and I put the pamphlet in there and I know I went through it but I just wasn't retaining." (R at 280).

Ms. Bosnich testified that she did not know about SGA limits or the maximum amount per month she could earn and still maintain DIB eligibility. (R at 294, 296, 300). She stated, "I really think that something like that, I would remember because it would have seemed odd to me for someone to tell me not to work." (R at 306). Ms. Bosnich also testified that she thought work was

5

helpful in addressing some of her mental problems, that it had therapeutic effects. (R at 299).

Ms. Bosnich testified that she received monthly Social Security checks from April 2001 through August 2002, which were directly deposited into her bank account. (R at 281-82, 290). She further testified that, as was her habit, she used the money for household expenses. (R at 282-84).

Mr. Bosnich testified that he and his wife purchased a condominium after they got married, using both of their assets to do so; he also testified that the condominium was held in both of their names. (R at 310, 314). Mr. Bosnich testified that his wife never sought his advice or opinion regarding the letters she received from the SSA, which he attributed to her feelings of inadequacy for receiving DIB in the first place. (R at 311). He testified that he was raised and educated in Australia and that he was, therefore, totally unfamiliar with the American Social Security system. (R at 307-308).

The ALJ issued his decision on May 27, 2004, denying Ms. Bosnich's request for a waiver of the second assessed overpayment. (R. at 15-21). On June 18, 2004, Ms. Bosnich requested review of the ALJ's decision by the Appeals Council. (R. at 236-38, 240-45). On July 11, 2005, the Appeals Council denied review of the ALJ's decision. (R at 5-9). Ms. Bosnich

6

then appealed her claim to the U.S. District Court for the Northern District of Illinois, which, on July 31, 2006, remanded the case to the Commissioner for further proceedings. (R at 346, 348-60). In doing so, the Court held that, while the ALJ did not err in finding that Ms. Bosnich's work could be considered SGA and that the second overpayment existed, the ALJ failed to consider the impact of Ms. Bosnich's mental impairment in assessing whether she was without fault in accepting the overpayment. (R at 357-60).

On remand, the ALJ scheduled a hearing for July 23, 2007. At that hearing, the ALJ learned that Ms. Bosnich had moved to Australia and that her attorney believed additional testimony from her was not necessary. (R at 495-97). Therefore, the ALJ considered the testimony provided earlier by Ms. Bosnich and her husband, as well as the documentary evidence in the record.

First, the record included progress notes and other documentation from Dr. Robert Marozas, a psychiatrist who treated Ms. Bosnich from January 2000 to March 2002. (R at 463-76). According to the Record, Dr. Marozas consulted with Ms. Bosnich by telephone every month or so about her psychiatric condition. (R at 463-65). During this time, Dr. Marozas renewed her prescriptions (Paxil and Klonopin), noting that she was doing well, that her mood was better, and that her symptoms were stable

7

with her current treatment. *Id.* Indeed, in September 2000, Dr. Marozas noted that Ms. Bosnich had no reports of anxiety or depression when taking her current medications, (R at 464); and, in November 2000, Ms. Bosnich reported that her anxiety quickly returned if she skipped a dose of her medication. *Id.* On February 8, 2001, Ms. Bosnich requested a renewal of her prescriptions, and Dr. Marozas granted that request, noting that she seemed to be doing well with her prescriptions. (R at 465).

Shortly thereafter, on February 13, 2001, Dr. Marozas completed a mental capacities assessment form. (R at 219-27, 468-76). According to that form, Ms. Bosnich had been diagnosed with major depressive disorder, panic disorder without agoraphobia, and amnestic disorder. (R at 219). In his assessment, Dr. Marozas stated that Ms. Bosnich had difficulty with memory when under stress and could only perform simple, routine work activities. *Id.* He noted that Ms. Bosnich periodically experienced panic when under work stress, which resulted in memory problems. (R at 220). Dr. Marozas concluded that Ms. Bosnich's performance was "inconsistent": she could perform routine simple tasks for short periods of time, then would get overwhelmed, lose sight of her goals, become confused and unable to carry on. (R. at 225). He noted, however, that Ms. Bosnich had no physical limitations. (R at 227). And, by March

8

2002, Ms. Bosnich reported to Dr. Marozas that her anxiety and depression were under control. (R at 465).

The Record also included a report prepared by Grace Gianforte, M.S., C.R.C., a certified rehabilitation counselor, who, at the request of Plaintiff's counsel, interviewed Ms. Bosnich, reviewed her medical and work records, and gave an opinion on February 20, 2001 regarding her employment. (R at 177-80). According to Ms. Gianforte's report, Ms. Bosnich graduated from high school and had additional clerical training in shorthand, typing, marketing, computer processing, and WordPerfect training, (R at 178); she worked two days a week as a file clerk at the University of Chicago. (R at 177).

Ms. Gianforte reported that, in that job, Ms. Bosnich worked alone and had no responsibility for answering the telephone, writing correspondence, typing, or entering computer data. *Id.* The work was unskilled, light to sedentary exertion, and part-time. *Id.* Ms. Bosnich was available to work part-time or full-time, based on her employer's needs, and she had difficulty responding appropriately to normal work stresses associated with full-time work, but was successful working part-time, working alone, and doing very simple work. (R at 180). Ms. Gianforte classified Ms. Bosnich's work as contingent and marginal. (R. at 180).

The Record also included a July 6, 2001 performance evaluation completed by Ms. Bosnich's supervisor at the University of Chicago Hospital, Pouneh Yasai. (R. at 436-39). Ms. Yasai evaluated Ms. Bosnich's work and found her performance to be of excellent quality, no need to be redone, very neat and free of errors. *Id*. She noted that Ms. Bosnich worked rapidly and completed an exceptional amount of work consistently. *Id*. She was completely familiar with all phases of her work and had excellent knowledge of her duties. *Id*. She possessed an unusual degree of self-reliance, exercised independent thought and action, could always be relied upon completely, and showed utmost confidence. *Id*.

Ms. Yasai found Ms. Bosnich to have a superior interest in her work. She welcomed constructive comment, and was cooperative. (R at 437, 439). She did a superior public relations job, created much good will and went out of her way to serve the public. *Id*. She was extremely conscientious, and was only absent or late for work when absolutely unavoidable. *Id*. Her supervisor gave her an overall "superior" rating, reflecting a level of "A" in all five categories of performance, including quality, quantity, knowledge of work and initiative, reliability, attitude, and public contacts. (R at 436-39). Ms. Yasai stated that Ms. Bosnich was "an exceptional employee" and that she was

"hard working, reliable, and well liked by all."   (R at 437, 439).

Finally, the Record before the ALJ included a December 8, 2003 note written by Sherry Stoher, Chief Coordinator of the Otolaryngology Department at the University of Chicago Hospital, where Ms. Bosnich worked; according to that note, Ms. Bosnich's duties in that job included pulling charts needed for upcoming clinics, copying and filing notes, and refilling charts when clinic visits were completed; she set her own schedule and worked at her own pace.   (R at 186).  Ms. Stoher's note does not include any assessment or evaluation of Ms. Bosnich's abilities or performance.

## The ALJ's Findings

On November 29, 2007, the ALJ issued a decision, finding Ms. Bosnich to be at fault in causing the second overpayment, and denying her request for waiver of repayment.  (R at 336-45).  In so finding, the ALJ declined to accept the opinion of Dr. Marozas because "the doctor's records clearly are in dramatic contradiction to his earlier submitted February 13, 2001 Mental Capacities Assessment." (R at 342).  The ALJ also determined that the doctor's assessment was inconsistent with Ms. Bosnich's performance abilities, as evidenced by her supervisor, Ms. Yasai. Indeed, the ALJ determined, Ms. Bosnich's ability to work at the

11

"superior" level, was evidenced by her supervisor's performance evaluation.

The ALJ concluded "that the doctor was attempting to use [Ms. Bosnich's] past history in reporting favorably in support of claimant and not under the total record." (R. at 343). Accordingly, the ALJ declined to fully credit the doctor's assessment. *Id.* The ALJ asserted that Ms. Bosnich working at the "superior" level reported by her supervisor "[r]aise[d] serious questions [about] her alleged lack of understanding," and caused the ALJ to doubt that her testimony concerning her mental capabilities was fully credible. (R at 342).

On February 1, 2008, the Appeals Council denied a request for review, making the ALJ's decision the final decision of the Commissioner. (R at 324-27). On June 13, 2008, Ms. Bosnich filed suit in the U.S. District Court for the Northern District of Illinois, seeking review of the overpayment decision, and the case was reassigned, by consent of the parties, to this Court. Thereafter, the parties filed cross motions for summary judgment; Ms. Bosnich filed her motion on October 27, 2008, and the Commissioner filed his on January 26, 2009. Plaintiff's reply was filed on February 24, 2009.

## Discussion

### A. Standard of Review

On appeal, the Commissioner's decision concerning the overpayment must be affirmed if it is supported by substantial evidence. 42 U.S.C. § 405(g)(2003). *See also Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not "re-evaluate the facts, reweigh the evidence, or substitute [its] own judgment for that of the SSA." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). But, to be affirmed, an ALJ must articulate his analysis by building an accurate and logical bridge from the evidence to his conclusions, so that the Court may afford the claimant meaningful review of the SSA's final decision. *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002).

### B. Legal Standard for Waiving Recovery of an Overpayment

An overpayment of disability insurance benefits occurs when a recipient receives more than the amount she is due and thereby becomes obligated to refund the excess amount to the SSA. 42 U.S.C. §404(a); 20 C.F.R. §§404.501-502. The Social Security Administration ("SSA") may waive the recovery of an overpayment if (1) the recipient is without fault in causing the overpayment;

13

and (2) recovery either defeats the purposes of the Social
Security Act or goes against principles of equity and good
conscience. 42 U.S.C. §404(b); 20 C.F.R. §404.506; *Banuelos v.
Apfel*, 165 F.3d 1166, 1173 (7th Cir. 1999).

An individual is not without fault where the overpayment
resulted from (a) an incorrect statement made by the recipient
that she knew or should have known was false, (b) failure to
furnish information that the recipient knew or should have known
was material, or (c) acceptance of a payment that she knew or
could have been expected to know was not the correct amount. 20
C.F.R. §404.507(a)-(c). When determining whether a recipient is
without fault in causing the overpayment of benefits, the SSA
must take into account any physical, mental, educational, or
linguistic limitation such individual may have, including any
lack of facility with the English language. 42 U.S.C. §404(b); 20
C.F.R. §404.507.

If a recipient is without fault, the SSA may waive recovery
of the overpayment if repayment would defeat the purpose of the
Act or go against principles of equity and good conscience.
Recovery of an overpayment defeats the purpose of the Act if it
would deprive the individual of funds needed for ordinary and
necessary living expenses. 20 C.F.R. §404.508. In addition,
repayment of the overpayment would be against equity and good

conscience if the individual (I) changed her position for the worse, or relinquished a valuable right, because of reliance on a notice that a payment would be made or because of the overpayment itself, or (ii) was living in a separate household from the overpaid person at the time of the overpayment and did not receive the overpayment. 20 C.F.R. §404.509(a). The individual's financial circumstances are immaterial to the question of whether repayment would run "against equity and good conscience." 20 C.F.R. §404.509(b).

The recipient has the burden of proving that she is entitled to a waiver of repayment. *Banuelos*, 165 F.3d at 1173; *Pliley v. Sullivan*, 892 F.2d 35, 39 (6th Cir. 1989). Even if the SSA may be at fault in making the overpayment, the recipient is not absolved of liability if she is found to be at fault in accepting the overpayment. *See* 20 C.F.R. §404.507.

## C. **Analysis**

The ALJ found that Ms. Bosnich was at fault in causing or accepting the second overpayment, and he, therefore declined to waive repayment. Ms. Bosnich argues that this finding was erroneous; specifically, she argues that the decision below must be reversed because: (1) the ALJ ignored certain evidence that was favorable to her - namely, the vocational expert's opinion and the note written by Sherry Stoher; (2) the ALJ substituted

15

his own assessment of Ms. Bosnich's condition for that of her medical doctor, and (3) the ALJ failed to appropriately consider Ms. Bosnich's subjective understanding of the overpayment issues and how her mental impairment may have impacted it.

Ms. Bosnich also argues that requiring her to repay the overpayment would defeat the purpose of the Social Security Act and go against the principles of equity and good conscience because her mental impairment prevented her from understanding her obligations under the law and regulations; she had, she argues, a good faith misunderstanding, based on her mental impairment, about how her working affected her DIB payments.

## 1. The ALJ's Determination Concerning Fault.

Here, the ALJ held that Ms. Bosnich was at fault in accepting the overpayment because she knew or could have been expected to know that acceptance was incorrect. In so ruling, the ALJ relied upon the favorable performance evaluations by Ms. Bosnich's work supervisors. In challenging the ALJ's finding of fault, Ms. Bosnich first argues that the ALJ ignored evidence favorable to her, including the vocational expert's opinion and the note written by Sherry Stoher.

Turning first to the VE's opinion, the Court finds that the ALJ did not ignore this evidence. Although he did not specifically mention the VE's report, he specifically stated that

he had considered Exhibit 72, which was a brief written and submitted by Ms. Bosnich's counsel in support of her position on the waiver of the second overpayment. (R. at 342). That brief (Exhibit 72) summarizes and highlights the VE's opinion – and it does so, having been submitted by Ms. Bosnich's attorney, in the light most favorable to Ms. Bosmich. (R. at 241). Thus, although he may not specifically have mentioned the VE's report, it is clear that the ALJ did not ignore this evidence.

Ms. Bosnich argues that the ALJ also ignored the note written by Sherry Stoher. First, this note says nothing about Ms. Bosnich's abilities; it says that she "set her own schedule and worked at her own pace," but it does not say that these criteria were somehow mandated by her impairment. Thus, it is difficult to see why this note is favorable to Ms. Bosnich. Additionally, although the ALJ did not specifically mention Ms. Stoher's note in his decision, he did give a detailed explanation as to why he relied upon the performance evaluation prepared by Ms. Yasai, Ms. Bosnich's other supervisor. The ALJ satisfactorily explained why he considered Ms. Yasai's evaluation to be a more reliable indicator of her "mental capacity and ability to know of her obligation to report earnings." (R at 342). Contrary to Ms. Bosnich's suggestion, the ALJ did not

17

ignore any favorable evidence – at least not without explaining his reasons for discounting that evidence.

Ms. Bosnich next argues that, in deciding that she had the mental capacity to understand her actions, the ALJ substituted his own assessment of Ms. Bosnich's condition for that of her treating physician. The Court cannot agree.

In *Wilder v. Chater*, a case cited by Plaintiff, a court-appointed psychiatrist testified that Wilder, a security guard, was severely depressed. *Wilder*, 64 F.3d 335, 337 (7th Cir. 1995). This was the only evidence in the record concerning the claimant's mental impairment. And, because there was no mention of depression in the claimant's medical records, the ALJ totally disregarded the psychiatrist's assessment and determined that depression played no role in the claimant's disability. *Id.* To bolster that conclusion, the ALJ emphasized the fact that the claimant had not been fired from her last job because of mental illness; in fact, she had retired of her own accord. The Seventh Circuit reversed the decision and remanded the case, holding that the ALJ was wrong to ignore the only medical evidence in the record and to substitute his own judgment for that of the psychiatrist; in deciding that the claimant's retirement status somehow evidenced her nondisability, the court held, the ALJ improperly played amateur psychiatrist. *Id.* at 338.

Unlike *Wilder*, this is not a case where the ALJ ignored the record evidence and substituted his own judgment for that of a medical professional. On the contrary, here the ALJ weighed inconsistent pieces of evidence, decided which evidence to believe and explained his reasons for doing so. The ALJ determined that Dr. Marozas' assessment was inconsistent with his progress notes, and he surmised, based on the surrounding circumstances, that the doctor may have been trying to exaggerate Ms. Bosnich's impairment. That was not unreasonable; nor does it amount to a substitution of judgment. In fact, in ruling as he did, the ALJ was adopting the earlier judgment of the doctor, as well as the judgment of Ms. Bosnich's supervisor, who had daily and constant contact with her throughout her months of employment. This Court will not second-guess the ALJ's well-reasoned findings on this issue.

Ms. Bosnich also argues that the ALJ failed to appropriately consider her subjective understanding of the overpayment issues and how her mental illness may have impacted it. The ALJ did consider Ms. Bosnich's mental capabilities when he concluded that she was at fault for accepting the overpayment. First, he considered that Ms. Bosnich's mental impairment was, by all accounts, well controlled at the time of the overpayment due to her medication. (R. at 344). To determine her level of

19

understanding, the ALJ also considered Ms. Bosnich's high school education, her regular compliance with the prescribed medication and Dr. Marozas' progress notes. (R. at 342). The ALJ's consideration of these different factors appropriately support his finding of fault.

Ms. Bosnich also argues that her memory problems, as evidenced by the VE's report and Dr. Marozas' assessment, demonstrate her subjective belief that she needed to work if she wanted to continue to receive benefits. But, if anything, the doctor's assessment, which states that her memory problems are exacerbated with work stress or if she does not continue her medication routine, would seem to support the conclusion that she was capable of understanding the situation at that time. (R at 220). According to the record evidence, Ms. Bosnich would not have been under any work stress (she was able to control her own schedule and pace; she testified that work had a therapeutic effect) and she was taking her medication regularly. Neither of the situations that would have given rise to memory problems existed at that time. The prescribing doctor's progress notes showed that Ms. Bosnich's "mental impairments were in fact well controlled and improved by her compliant use of medication." (R. at 344).

In addition, the ALJ reasoned that, although Ms. Bosnich testified that she believed she was supposed to work in order to continue receiving disability benefits, by the time the second overpayment occurred – during the appeal of the first overpayment – she should have known that that was not the case and that her belief to the contrary was erroneous. (R at 292). Throughout the proceedings relating to the first overpayment, Ms. Bosnich was represented by an attorney, who certainly should have known what the SSA and the law required of her; the ALJ appropriately attributed this knowledge to Ms. Bosnich as well. Simply, Ms. Bosnich was on notice during her appeal of the first overpayment that her understanding of the need to work was mistaken. (R at 342, 344).

## 2. Principles of equity and good conscience.

The Social Security Act provides for waiver of overpayments when the recipient is without fault and when such recovery would defeat the purposes of the Act or be against the principles of equity and good conscience. 42 U.S.C. § 404(b); 20 C.F.R. § 404.506; *Banuelos v. Apfel*, 165 F.3d 1166, 1173 (7th Cir. 1999). As explained, the ALJ determined that Ms. Bosnich could not satisfy the first prong of this standard, and that determination was supported by substantial evidence. Nevertheless, the Court briefly considers whether Ms. Bosnich could establish that

repayment would somehow defeat the purpose of the Act or run contrary to principles of equity and good conscience – a question that should more appropriately be answered by the ALJ in the first instance.

On this issue, Ms. Bosnich first argues that requiring her to repay the overpayment would be against principles of equity and good conscience, because she accepted the money in good faith, with the misunderstanding that she was supposed to work to retain her benefits. She argues that this good faith misunderstanding was the byproduct of her mental impairment – specifically, her inability to remember and process information provided to her. She asserts that "there is a general policy of waiving recovery for no fault situations involving good faith misunderstandings." Pl.'s Mot. Summ. J. 13.

However, the SSA regulation defines recovery of an overpayment as "against equity and good conscience" if an individual (1) changed his or her position for the worse or relinquished a valuable right because of reliance upon a notice that a payment would be made or because of the overpayment itself; or (2) was living in a separate household from the overpaid person at the time of the overpayment and did not receive the overpayment. 20 C.F.R. § 404.509. Also, the individual's financial circumstances are not material to a

finding of against equity or good conscience. 20 C.F.R. § 404.509.

Given the circumstances, and given his rulings concerning fault, the ALJ likely would not have been swayed by Ms. Bosnich's good faith misunderstanding argument. But, more importantly, even if Ms. Bosnich could show that her mental impairment caused her to have a good faith misunderstanding concerning her obligations, a good faith misunderstanding is not enough; Ms. Bosnich does not meet any of the requirements listed under 20 C.F.R. §404.509.

Ms. Bosnich claims that it would be "unduly harsh" to make her repay the overpayment because she only makes "$4,000 a year, no longer works, and spent all of her SSA money on household necessities." Pl.'s Mot. Summ. J. 14. However, under the regulations, "an individual's financial circumstances are not material to a finding of against equity or good conscience." 20 C.F.R. § 404.509. Thus, even if Ms. Bosnich proved financial hardship, it would not be enough to mandate an outcome different from the one she obtained.

## CONCLUSION

For the reasons explained above, the Court finds that the Commissioner's decision concerning Ms. Bosnich's second overpayment was supported by substantial evidence. Accordingly, the Court grants the Commissioner's motion for summary judgment and denies Ms. Bosnich's motion for summary judgment.

Dated: July 23, 2009          ENTER:

ARLANDER KEYS
United States Magistrate Judge

24